UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAMIAN HALL,<br><br>        Plaintiff,<br><br>  v.<br><br>DR. GENE YUP, *et al.*,<br><br>        Defendant. | 3:15-cv-00242-RCJ-VPC<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

       This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendant's motion for summary judgment (ECF No. 81), plaintiff's opposition (ECF No. 89), and defendant's reply (ECF No. 94).  Having reviewed the record and papers, the court recommends that defendant's motion be granted.

       **I.**      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

       Damian Hall ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), incarcerated at all relevant times at Northern Nevada Correctional Center ("NNCC"). Acting *pro se* and pursuant to 42 U.S.C. § 1983, plaintiff asserts three counts of Eighth Amendment deliberate indifference against NNCC dentist Dr. Gene Yup ("Dr. Yup"), NNCC Nursing Director John Keast ("Keast"), and NDOC Medical Director Dr. Aranas ("Dr. Aranas") (collectively, "defendants").  (ECF No. 10; ECF No. 40.)

       As set forth in plaintiff's third amended complaint, all three counts concern dental complications that plaintiff experienced from September 2014 through May 2015.  (ECF No. 40.)  In Count I, plaintiff alleges that Dr. Yup repeatedly injured plaintiff's teeth and gums, failed to treat an ensuing infection that lasted eight months, and failed to prescribe plaintiff an appropriate diet.  (*Id.* at 4.)  Additionally, the only pain management Dr. Yup provided to plaintiff was a temporary prescription for Tylenol, and he "took that away when plaintiff said it was not easing the pain." (*Id.*) In Count II, plaintiff argues that Dr. Aranas failed to hire a sufficient number of dentists to timely

1  treat plaintiff's dental issues. (*Id.* at 5.) Furthermore, Dr. Aranas waited nearly eight months to
2  approve and schedule plaintiff for treatment at an outside facility capable of resolving plaintiff's
3  dental issues. (*Id.*) In Count III, plaintiff brings a deliberate indifference claim against Keast for
4  failing to schedule plaintiff to be seen by a medical provider, despite being aware of plaintiff's
5  "painful infected partially removed tooth." (*Id.*) Finally, plaintiff states briefly in his complaint that
6  he "asserts the tort of medical malpractice pursuant to N.R.S. 41A.100." (*Id.* at 3.)

7        Defendant's motion for summary judgment, filed on October 12, 2017, provides the court
8  with additional details regarding plaintiff's dental treatment. (ECF No. 81.) Plaintiff does not
9  dispute the following facts. On September 23, 2014, plaintiff submitted an emergency grievance
10 demanding that he see a dentist to extract a painful tooth. (*Id.* at 3; Def. Exh. B at 3.) He was taken
11 to the NNCC dental clinic that day, ordered to temporarily discontinue his blood thinning
12 medication, and scheduled to have his tooth extracted three days later. (Def. Exh. B at 3.) Dr. Yup
13 extracted plaintiff's tooth #32[1], but could not remove some of the root tips of the tooth. (Def. Exh.
14 D at 1.) On October 1, 2014, plaintiff submitted a medical kite demanding to have "the rest of the
15 tooth pulled," and notified NNCC that "another tooth is bad to[o]." (Def. Exh. B at 1.) Two days
16 later, on October 3, 2014, Dr. Yup extracted plaintiff's tooth #31, and attempted to extract the
17 remnants of plaintiff's tooth #32. (ECF No. 81 at 5.)

18       Approximately one month later, on November 2, 2014, plaintiff submitted an informal
19 grievance alleging that Dr. Yup extracted a "good tooth," and that plaintiff was still in pain from the
20 prior extraction. (Def. Exh. I at 2.) On November 25, 2014, plaintiff appealed his grievance to the
21 first level and requested to be seen by "someone else other than Dr. Gene Yup." (*Id.* at 4; ECF No.
22 9[2] at 20.) On December 29, 2014, plaintiff received a first level response from Keast informing
23 plaintiff that Dr. Yup was the only dentist available at NNCC. (Def. Exh. I at 3.) Plaintiff appealed
24 this response to the second level on February 2, 2015, and on March 25, 2015, he received a second

---

[1] The court takes judicial notice of the Universal System of classifying teeth. *See* MICHAEL H. ROSS & WOJCIECH PAWLINA, HISTOLOGY: A TEXT AND ATLAS 484 (5th ed. 2006); (*see also* Def. Exh. C at 1).

[2] Plaintiff provides the continuation pages of his grievances in his First Amended Complaint. (*See* ECF No. 9.)

1 level response informing him that he was scheduled to be seen by an outside dentist. (*Id.* at 6.)
2 Finally, in May 2015, an outside dentist fully removed the remnants of plaintiff's tooth #32. (Def.
3 Exh. G at 5–6.)

4 Defendants move for summary judgment on the grounds that (1) no Eighth Amendment
5 violation occurred, and (2) defendant is entitled to qualified immunity. Because the court agrees that
6 plaintiff's Eighth Amendment rights were not violated, it need not reach the issue of qualified
7 immunity.

8 **II.    LEGAL STANDARD**

9 Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v.*
10 *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary
11 judgment when the record demonstrates that "there is no genuine issue as to any material fact and the
12 movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330
13 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that
14 might affect the outcome of the suit under the governing law will properly preclude the entry of
15 summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."
16 *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable
17 jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading
18 allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.
19 *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*,
20 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable
21 minds could differ when interpreting the record; the court does not weigh the evidence or determine
22 its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*,
23 18 F.3d at 1472.

24 Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the
25 burden of proof at trial "must either produce evidence negating an essential element of the nonmoving
26 party's claim or defense or show that the nonmoving party does not have enough evidence of an
27 essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099,

1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party carries its burden, the nonmoving party must "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations and quotations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. The Ninth Circuit follows a "policy of liberal construction in favor of *pro se* litigants." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998). Accordingly, for purposes of opposing summary judgment, a reviewing court will consider as evidence the allegations a *pro se* litigant offers in motions and pleadings, where the allegations are based on personal knowledge and set forth facts that would be admissible into evidence, and where the litigant attested under penalty of perjury that they are true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Nevertheless, mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### III. DISCUSSION

**A.   Legal Standards for Civil Rights Claims under § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir.

2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067.

It is undisputed that defendants, as NNCC officials, are persons acting under color of state law. To prevail on his section 1983 claims, plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional right. Plaintiff claims that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (*See* ECF No. 40 at 4-9.) Although the Eighth Amendment imposes limitations on federal actors only, its guarantees apply with full force to state actors through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660 (1962). The court will "adhere to the conventional and convenient (though technically imprecise) practice of referring to the underlying [Eighth Amendment] provision … rather than to the Fourteenth Amendment …." *Finley v. Parker*, 253 F. App'x 634, 635 (9th Cir. 2007)

**B.    Eighth Amendment Deliberate Indifference Standard**

Deliberate indifference to inmates' medical needs is proscribed by the Eighth Amendment's protection against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). "Dental care is one of the most important medical needs of inmates. Accordingly, the Eighth Amendment requires that prisoners be provided with a system of ready access to adequate dental care." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (internal citations and quotation omitted). However, "[d]eliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). It is not enough for an inmate to demonstrate medical malpractice or negligence. *Id.* Rather, to succeed on an Eighth Amendment claim, an inmate must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual

1  punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d
2  1060, 1066 (9th Cir. 2014) (internal quotation omitted).

3  A deprivation is considered serious if the state's failure to provide treatment could result in
4  further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091,
5  1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would
6  find important and worthy of comment or treatment; the presence of a medical condition that
7  significantly affects an individual's daily activities; or the existence of chronic and substantial pain."
8  *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

9  If a plaintiff shows he has suffered from a serious medical need, he or she must then show
10 that prison officials responded to that need with deliberate indifference. "Deliberate indifference
11 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it
12 may be shown by the way in which prison physicians provide medical care.'" *Colwell v. Bannister*,
13 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th
14 Cir. 1988). However, a prison official may only be held liable if he or she "knows of and disregards
15 an excessive risk to inmate health and safety." *Toguchi*, 391 F.3d at 1057. The defendant must have
16 had actual knowledge from which he or she could infer that a substantial risk of harm existed, and
17 also have made that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to
18 provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06.

19 Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that
20 prisoners will have unqualified access to health care …." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).
21 Nor is "the routine discomfort inherent in the prison setting" actionable under the Eighth Amendment.
22 *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *see Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th
23 Cir. 2014) ("The Eighth Amendment requires neither that prisons be comfortable nor that they
24 provide every amenity that one might find desirable.") (internal quotation omitted). Accordingly,
25 prison officials are not deliberately indifferent simply because they prescribed a course of treatment
26 different than the one the inmate prefers, *Toguchi*, 391 F.3d at 1058, and a delay in providing dental
27

treatment, standing alone, is not a constitutional violation unless the delay leads to further harm, *Hallett v. Morgan*, 296 F.3d 732, 746 (citing *Hunt*, 865 F.2d at 200).

**C.    Analysis**

Plaintiff contends that complications arising out of Dr. Yup's dental treatment caused him to suffer chronic, "excruciating" pain, which Dr. Aranas and Keast left unresolved for approximately eight months. (ECF No. 89 at 8.) This court assumes for the purposes of this motion that his medical needs were serious. Turning to the second prong of the deliberate indifference analysis, however, plaintiff's claim fails.

*i.   Dr. Yup*

Plaintiff provides no evidence that Dr. Yup was anything more than negligent. It is axiomatic that medical malpractice, even when colored with gross negligence, does not violate the Eighth Amendment "merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see, e.g.*, *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Clement v. Gomez*, 298 F.3d 898, 904-05 (9th Cir. 2002); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). Rather, "there must be a *conscious* disregard of a serious risk of harm for deliberate indifference to exist." *Toguchi*, 391 F.3d at 1059 (citing *Lolli,* 351 F.3d at 421).

It appears to the court that plaintiff's claim against Dr. Yup is founded on four separate instances of alleged medical error: 1) Dr. Yup repeatedly failed to fully extract plaintiff's #32 tooth; 2) Dr. Yup extracted plaintiff's #31 tooth—a "good tooth"—and damaged one of plaintiff's incisors; 3) Dr. Yup prescribed only Tylenol for plaintiff's pain; and, 4) Dr. Yup did not prescribe antibiotics for plaintiff's infection. (ECF No. 89 at 5-8.)

In none of these instances does plaintiff provide evidence that Dr. Yup was aware that his actions or inactions, even if in error, posed a serious, "medically unacceptable" risk of harm to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). In light of defendants' expert testimony that tooth root tips often remain after extraction, and in the absence of evidence to the contrary, no reasonable jury can find that Dr. Yup's repeated attempts to fully extract plaintiff's #32 tooth exhibited deliberate indifference. (Def. Exh. H.) Similarly, plaintiff's declaration that Dr.

Yup extracted the wrong tooth cannot support a finding that he did so with deliberate indifference because Dr. Yup's contemporaneous medical notes identified a buccal fracture (Def. Exh. D at 1–2), which defendants' expert identifies as a proper basis to extract his tooth (Def. Exh. H at 2). Finally, even assuming plaintiff notified Dr. Yup about his pain and a possible infection, Dr. Yup's decision to only temporarily prescribe Tylenol and forego antibiotic treatment, (*see* Def. Exh. D), constitutes a mere difference of opinion as to the proper course of treatment. *Toguchi*, 391 F.3d at 1058 (difference of opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference). Indeed, Dr. Yup's medical notes demonstrate that he did not find an infection, much less one indicating antibiotic intervention (Def. Exh. D), and he explains in his response to plaintiff's request for admission that he prescribed pain medication on a temporary basis in order to avoid the liver and kidney damage that results from prolonged use (Plaintiff Exh. B at 6). Defendants have carried their burden of establishing that the record forecloses a reasonable jury from finding that Dr. Yup acted in conscious disregard of a serious risk of harm to plaintiff. *Lolli*, 351 F.3d at 421.

> *ii.   Keast*

No reasonable jury can find that that Keast consciously delayed or denied plaintiff treatment in violation of the Eighth Amendment. Plaintiff argues that Keast became aware of his medical needs when he filed a first level grievance on November 25, 2014. The grievance stated that he was in severe pain and did not want to see Dr. Yup again. (Def. Exh. I at 4.) Keast replied simply that plaintiff did not have the ability to choose his care provider, and that Dr. Yup is the only care provider available at NNCC. (*Id.*) Keast's response was merely descriptive of NDOC policy and constitutional standards, and did nothing to prevent plaintiff from seeking dental treatment for his pain from Dr. Yup. *See Roberts v. Spalding*, 783 F.2d 867, 870 (9th Cir. 1986) (holding that prison inmate has no independent constitutional right to outside medical care supplemental or additional to the medical care provided by the prison staff within the institution); *see also Spruill v. Gillis*, 372 F.3d 218, 237 (3rd Cir. 2004) ("If a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). As

1  plaintiff's claim against Keast is limited to Keast's denial of his first level grievance, summary
2  judgment is proper. *Liberty Lobby*, 477 U.S. at 248.

3          *iii.*   Dr. Aranas

4  Plaintiff claims that Dr. Aranas violated the Eighth Amendment on three separate grounds.
5  First, plaintiff claims that Dr. Aranas unconstitutionally delayed plaintiff's receipt of necessary dental
6  care and pain medication. (ECF No. 12–13.) Defendants correctly point out that there is no evidence
7  that Dr. Aranas interfered with plaintiff's access to dental treatment from Dr. Yup. (ECF No. 94 at
8  5.) Instead, it is clear that plaintiff voluntarily refused to receive treatment from Dr. Yup. (Def. Exh.
9  I at 2.) Given these facts, Dr. Aranas could only have been deliberately indifferent if he inferred that
10 Dr. Yup's treatment was so deficient that it was tantamount to a complete denial of dental care.
11 *Colwell*, 763 F.3d at 1066; *Estelle*, 429 U.S. at 105–06 ("An accidental or inadvertent failure to
12 provide adequate care is not enough to impose liability."). Plaintiff fails to provide evidence to
13 genuinely dispute whether Dr. Aranas made this inference.

14 Nor does he dispute that Dr. Aranas issued a timely response to plaintiff's second level
15 grievance and scheduled an appointment with an outside dental care provider, as plaintiff requested.
16 (Plaintiff Exh. K at 2.) Plaintiff's speculation that Dr. Aranas intentionally "waited nearly eight
17 months to make this decision" (ECF No. 40 at 5) must be disregarded because plaintiff lacks personal
18 knowledge of Dr. Aranas's mental state and provides no evidence regarding the extent to which the
19 outside dentist contributed to the delay. *See Nelson v. Pima Community College,* 83 F.3d 1075,
20 1081–82 (9th Cir.1996) ("[M]ere ... speculation[does] not create a factual dispute for purposes of
21 summary judgment."). Furthermore, plaintiff does not explain how he arrived at the conclusion that
22 Dr. Aranas was aware of, and disregarded, plaintiff's serious dental needs for eight months. (*See*
23 ECF No. 40 at 5; ECF No. 89 at 13.) Any implicit contention that Dr. Aranas had constructive
24 knowledge of plaintiff's dental issues by virtue of his position as NDOC Medical Director is
25 insufficient to prove deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 826 (1994) ("The
26 subjective test does not permit liability to be premised on obviousness or constructive notice.")

27

1       Second, plaintiff takes issue with Dr. Aranas's delay in referring plaintiff "to a medical 2   provider to obtain painkiller medication," (ECF No. 89 at 13), but plaintiff had the opportunity to 3   request painkillers from NNCC medical professionals in the intervening period.  Plaintiff's refusal to 4   do so was a voluntary choice that cannot logically provide the basis for a claim that Dr. Aranas 5   unconstitutionally delayed plaintiff's receipt of pain medication.  The court notes that plaintiff did 6   not request pain medication in his grievance to Dr. Aranas, so it is not even clear how Dr. Aranas 7   could have had the requisite awareness to be deliberately indifferent in this respect.  Dr. Aranas's 8   decision to schedule a non-emergency outside consultation was a reasonable response to plaintiff's 9   firm refusal to complete his treatment with Dr. Yup.  Prison officials who act reasonably cannot be 10  held liable for deliberate indifference.  *Farmer*, 511 U.S. at 845.

11      Third, plaintiff argues that Dr. Aranas was deliberately indifferent in failing to hire competent 12  dentists in sufficient numbers to meet the demands of NNCC.  Plaintiff's attack on Dr. Yup's 13  competency, as the only dentist at NNCC, fails because Dr. Yup is a licensed medical provider. 14  (Plaintiff's Exh. E at 4–8.)  The cases plaintiff provides in support of his proposition do not directly 15  confront the issue of whether a licensed physician, such as a dentist, can be considered "unqualified" 16  for Eighth Amendment purposes.  *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986) (remanding 17  to district court where there was evidence that "unqualified personnel regularly engage in medical 18  practice" but district court failed to make explicit finding regarding their "medical qualification[s]"); 19  *Hoptowit v. Ray*, 682 F.2d 1287 (9th Cir. 1982) (affirming holding that prison violated Eight 20  Amendment based in part on finding that prison's "[m]edical services are provided by… (mid-level 21  practitioners), rather than physicians").  To the contrary, these cases heavily imply that licensure in a 22  particular medical practice is a sufficient condition to pass constitutional muster.  *See Hoptowit*, 682 23  F.2d at 1254 ("it could well be that with improved mid-level staffing in the prison … the approach 24  taken by the State would be constitutionally permissible").

25      Plaintiff's claim that the Eighth Amendment compelled him to hire additional dentists must 26  also fail.  For one, plaintiff mischaracterizes *Dean v. Coughlin*, 623 F. Supp. 392 (S.D.N.Y 1985) as 27  holding that "a minimum of two dentists were necessary to treat 1900 inmates."  (ECF No. 89 at 12.)

1  Nowhere in *Dean* is such a bright line rule apparent; in fact, that court explicitly declined to set a
2  specific standard. *Dean*, 623 F. Supp. at 216. In any event, this court is bound only by the rulings of
3  the Ninth Circuit and the Supreme Court of the United States, neither of which has pronounced a
4  constitutionally mandated dentist-to-prisoner ratio. *See Estelle v. Gamble*, 429 U.S. 97, 102 (1976)
5  (Eighth Amendment requirements measured by "*evolving* standards of decency") (emphasis added);
6  *Hoptowit*, 682 F.2d at 1254 ("[T]here is more than one way in which the State could provide necessary
7  medical services"). In making his case, plaintiff was required to provide evidence to support a factual
8  finding that NNCC had an inadequate dental care system necessitating an additional dentist.
9  However, plaintiff only speculates that Dr. Yup was in charge of the dental care of 4,000 prisoners.
10 (ECF No. 89 at 13.) This figure is without evidentiary support, is not based on plaintiff's personal
11 observation, and is, therefore, inadmissible evidence that cannot defeat a motion for summary
12 judgment. *Jones*, 393 F.3d at 923. Plaintiff provides no other evidence of understaffing distinct from
13 his claim that Dr. Yup is unqualified to provide dental treatment at NNCC.

14       Because plaintiff fails to provide sufficient evidence upon which a reasonable jury can find
15 that defendants acted with deliberate indifference, summary judgment is proper as to plaintiff's
16 Eighth Amendment claims. *Liberty Lobby*, 477 U.S. at 248. In the absence of a claim over which
17 this court has original jurisdiction, plaintiff's state law claim of medical malpractice should be
18 dismissed without prejudice. 28 U.S.C. 1367(c)(3) (2012); *see Keating v. Nebraska Public Power*
19 *Dist.*, 660 F.3d 1014 (8th Cir. 2011) (district court permitted to dismiss without prejudice pendent
20 state-law claim in light of its grant of summary judgment on farmers' § 1983 claim). The court need
21 not consider defendants' defense of qualified immunity.

22                              **VI.   CONCLUSION**

23       Based upon the foregoing, the court finds that the record forecloses a reasonable jury from
24 finding any dispute of fact by which plaintiff could prevail on his claim that defendants were
25 deliberately indifferent to his medical needs. Accordingly, the court recommends that defendant's
26 motion be granted. Plaintiff's claim of medical malpractice should be dismissed without prejudice
27 pursuant to 28 U.S.C. 1367(c)(3).

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VII.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's state law claim of medical malpractice under NRS 41A.100 be dismissed without prejudice;

**IT IS FURTHER RECOMMENDED** that defendant's motion for summary judgment (ECF No. 81) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED:**   March 7, 2018.

_____
**UNITED STATES MAGISTRATE JUDGE**